UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| IN RE: ) | Case No.: 10-10335 |
| ) | Chapter 11 |
| FRENCH BROAD PLACE, LLC ) | |
| Debtor. ) | |
| _____) | |

## APPROVED THIRD AMENDED
## DISCLOSURE STATEMENT

On March 25th, 2010, French Broad Place, LLC (hereinafter referred to as "French Broad Place") filed a voluntary Chapter 11 petition. Notice and order for relief were filed by the Court on March 25th, 2010.

Pursuant to 11 USC Section 1125 of the Bankruptcy Code, French Broad Place has prepared and filed this disclosure statement for the Court's approval for submission to the holders of claims or interests with respect to French Broad Place and its assets.

The purpose of the disclosure statement is to provide the holders of claims against or interests in French Broad Place with adequate information about French Broad Place and the plan to make an informed judgment about the merits of approving the plan.

### THE DEBTOR - HISTORY AND ORGANIZATION

French Broad Place was created on August 14th, 2006. Presently there are six (6) equal members of French Broad Place. Scott Latell and Joshua Burdette are the Managing Members of the company. The Owners have over $4,500,000.00 of cash equity in the development to date. While the six owners have previously been active in real estate investments, development, construction, sales and leasing, as well as being involved in a variety of different businesses, French Broad Place was formed specifically for the development of the real estate community known as French Broad Place, LLC, a 48 unit mixed use project in downtown, Brevard, NC. French Broad Place has in the past had as many as twelve (12) employees. Presently, the Company has three employees.

In the years prior to the filing of the Petition, French Broad Place was an operating development company with 100% of its activities devoted to construction of the Brevard, NC property development which in November 2007, began selling inventory and leasing commercial space. With the downturn in the economy in 2009, construction funds were depleted before many of the pre-sold inventory could be finished and closed in accordance with the purchase and sale contracts. Subsequently, delays in the finish work and the construction lender's unwillingness to advance funds to assist with the finishing costs resulted in many purchasers abandoning their agreements, which led to the filing of the original Petition in the Spring of 2010.

Prior to the filing of the Petition, the owners of French Broad Place determined that it was in the best interest of French Broad Place as well as its creditors, that the financial structure of French Broad Place be augmented with a total refinance or Debtor in Possession (DIP) loan to complete the construction and close the salvaged sales agreements. French Broad Place attempted to refinance the entire capital structure, approaching more than two dozen lenders and investment bankers, and expending over $60,000 in costs to do so. Certified appraisals obtained by third party lenders confirmed the 85% completion of the building and demonstrated substantial equity in the property that could support new financing. However, due to the stoppage of construction progress and the static position the construction lender held, new lenders were reluctant to further underwrite the loan applications. Thus, new total refinancing was no longer feasible. Just prior to filing the Chapter 11 petition, the owners selected a DIP lender to provide the necessary funds to complete the improvements of all of the common areas of the property, making the entire building functional and accessible to more potential purchasers, complete pre-sold units, finish a model unit for showings, complete a few spec units, and provide funds for advertising, marketing, loan costs and interest expenses. In addition, French Broad Place would streamline its operations by reducing its paid staff to three key owners/managers and one sales assistant. French Broad Place outsourced its accounting and financial reporting.

Subsequently, a qualified, 3rd Party DIP loan commitment was received and accepted by French Broad Place and a motion was filed for its acceptance and use of funds to the Court April 29th, 2010. Following the filing of this motion, the two existing secured lenders requested a series of meetings with French Broad Place and made a proposal to French Broad Place that they do the DIP loan in place of the 3rd party DIP Lender.

On August 6th, 2010 the Court approved the French Broad Place's Motion for Approval of the secured lenders' DIP loan with conditions, which have been met by all the parties.

On September 13th, 2010 the loan closed, with funding shortly there after.

The DIP loan provides for a maximum loan amount of $2,961,431.00, for an initial loan term of thirteen months after the closing date (subject to a renewal for twelve months upon certain conditions, including meeting a sales quota of gross sales totaling $7,400,000.00). A copy of the Term Sheet for the DIP loan is attached hereto. The proceeds of the loan are to be used only in accordance with the Construction and Funding Budget attached to the Term Sheet. The funds are to be held in the DIP Loan Deposit Account, and disbursed upon request by the lender. Upon the sale of units, twenty percent of the net sales proceeds will be held in a Build-out Reserve Account for use in construction of additional units (subject to the cap on the build-out reserve balance of $500,000.00). Forty percent of the net sales proceeds will be paid to the DIP lender and forty percent of the net sales proceeds will be paid to Asheville Savings Bank. No portion of the net sales proceeds will be paid to French Broad Place for any purpose other than construction of residential units, until payment in full of the DIP loan, the Asheville Savings Bank debt, and the Metromont debt. The parties anticipate that the DIP loan funds will be sufficient to complete all common areas and six units.

Parties to the DIP loan also agreed to the following:

A. French Broad Realty, Inc., which is a separate organization from French Broad Place but is owned by principals of French Broad Place, is allowed a limited six months sales listing for all units with a 1.5% listing-side commission and an additional 3% commission to be paid to the procuring broker if other than French Broad Realty, Inc.

B. French Broad Realty, Inc. will be allowed to draw up to $11,500.00 per month for use as salary for its personnel, which may include members of French Broad Place, for a period of six months. French Broad Realty, Inc., is owned by Cobalt Solutions, LLC, which is owned by French Broad Place members Scott Latell, Mark Latell, Frank Latell, Ed Burdette and Josh Burdette, and financial advisor Lyle Preest.

C. No new lease agreements will be permitted.

D. French Broad Place shall submit a Disclosure Statement no later than August 31, 2010 (extended by agreement to August 19, 2010) and will make its best effort to have a Plan confirmed as soon as possible, but no later than April 30, 2011.

E. No units may be sold for less than the minimum amounts, as provided in the Term Sheet and loan documents. These minimum sales prices will remain in effect until all secured claims have been paid in full.

French Broad Place is of the opinion that restructuring of its capital requirements and operations will enable it to successfully operate and perform under the terms of its Chapter 11 Plan.

## FINANCIAL INFORMATION

Attached to this Disclosure Statement is financial information relevant to French Broad Place. French Broad Place expects that as the construction completes, the economy improves, the opportunities for additional contracted, profitable sales will grow.

Attached is the following:

1. French Broad Place's tax return for year ending December 31, 2009 (which includes for operations prior to restructuring). There was no activity in the company for the first three months of 2010 except the depletion of the Asheville Savings Bank interest reserve account and Metromont Corporation's continued accrual of its interest on its second lien deed of trust up to the date of the Petition filing. There were no funds available to pay for financial reporting during this short term.

2. French broad Place's Balance Sheet as of December 31, 2009.

3. French Broad Place's projection of gross receipts for 2011.

## CREDITOR CLAIMS

1. Administrative Claims:

   Administrative claims are limited to professional fees for legal, accounting and management services. It is not anticipated that the unpaid balances will exceed a total of $30,000.00.

2. Secured Claims:

   a. Metromont Corporation, ( the DIP Lender) holds a first lien deed of trust on the assets of French Broad Place in the amount of $2,961,431.00.

   b. Asheville Savings Bank, holds a second lien deed of trust on the assets of French Broad Place in the amount of $8,620,618.94 (as of 4/16/2010).

   c. Metromont Corporation holds a third lien deed of trust on the assets of French Broad Place in the amount of $2,765,234.64 (as of August 6th, 2010)

   d. Ed Burdette Construction, Inc. holds a Materialmans/Mechanics Lien in the amount of $2,627,773.00. Ed Burdette is a principal in Ed Burdette Construction, Inc. and also a member of French Broad Place, LLC.

3. Priority Claims:

   None

4. Unsecured Claims:

   Scheduled unsecured claims total $630,404.73. In addition, unscheduled claims total $1,755,140.00. In the opinion of French Broad Place, many of the unscheduled claims are subject to objection in that the claims are against the general contractor and not French Broad Place and/or have been reduced by payments by the general contractor and others. The total amount of unsecured claims has been reduced in the amount of $265,000.00 which was paid to critical vendors as provided in a court order authorizing payment. French Broad Place anticipates that with inclusion of the unsecured claim held by Ed Burdette Construction, Inc., total unsecured claims, after objection and elimination of duplication, will be approximately $3,300,000.00.

     5.     Executory Contracts:

Seven individuals/entities hold contracts for the purchase of condominiums for which deposits have been accepted. Those parties are listed in Schedule G-Executory Contracts and Unexpired Leases, a copy of which is attached hereto. Existing leases with purchase options are as follows:

     a.     Dugans Irish Restaurant and Pub (option price $1,135,500.00, terminates February 29, 2029)

     b.     Elements Spa (option price $700,404.00, terminates August 31, 2012)

     c.     Healthy Harvest (option price $445,480.00, terminates August 31, 2014)

     d.     French Broad Café (option price $426,465.00, terminates June 30, 2014)

## LEASING INFORMATION

In addition to constructing units for sale, French Broad Place presently leases four units and collects monthly rent totaling $12,133.00. As part of its pre-petition loan requirements, Asheville Savings Bank was given a security interest in the rent collected by French Broad Place from tenants in its leased premises, by way of an Assignment of Rents. On April 29, 2010, the Court granted the Motion filed by French Broad Place for an Order Authorizing Use of Cash Collateral, which provided that French Broad Place could collect the rents and spend them as provided in a monthly budget made part of the Order Authorizing Use of Cash Collateral. The budget provides for no significant monthly net operating income, but does provide a means for French Broad Place to pay its monthly operating expenses, including insurance, utilities, office expenses, etc. A copy of the Order Authorizing Use of Cash Collateral, including the monthly budget, is attached hereto. The terms of the Order Authorizing Use of Cash Collateral are binding on French Broad Place until such time that Asheville Savings Bank has been paid in full, but French Broad Place anticipates that after expiration of the Order Authorizing Use of Cash Collateral, it will continue to collect the rents and pay its monthly operating expenses in a fashion similar to that provided in the monthly budget included in the Order.

## THE PLAN OF REORGANIZATION

The plan provides for creditors to be paid from the sale of units by French Broad Place, as specified for each individual class in the Plan. Interested parties may monitor the progress of sales by making a written request for a quarterly report regarding sales activities and progress in complying with the Plan, including balances due to secured creditors and copies of Closing Statements showing disbursements to claim holders, any checks issued, including an explanation of how the checks were calculated, a listing of payments to secured creditors, and, to the extent that the DIP loan has not been fully disbursed at the time of the sale, any draws made under the terms of the DIP loan. Any disbursement check resulting from the sale of a unit shall be accompanied by a closing statement which indicates how the amount of the payment was determined.

**DEFINITIONS:** "Net Sales Proceeds" means the balance remaining from the sale of a unit after payment of real estate sales commissions and closing costs normally born by the seller (and specifically does not include overhead and salaries).

**CLASS 1. ADMINISTRATIVE CLAIMS**: On the effective date of the plan, French Broad Place will first pay all administrative claims including court costs, unpaid quarterly fees, and professional fees, including accountants and attorneys and property operating expenses as approved by the Court for French Broad Place.

**CLASS 2. SECURED CLAIM OF METROMONT CORPORATION - the DIP lender** As provided in the First Agreed Order between French Broad Place and Metromont Corporation, filed August 6th$^{th}$, 2010, French Broad Place will pay 10% per annum accrued interest monthly (being paid from an existing escrow account controlled and disbursed by Metromont Corporation) and for a period of thirteen months, principal reduction will be paid periodically as future inventory sales close. Metromont Corporation will receive 40% of all future Net Sales Proceeds (NSP) to be applied to the principal loan balance outstanding.

**CLASS 3. IMPAIRED SECURED CLAIM OF ASHEVILLE SAVINGS BANK** will be paid interest monthly, as billed, on the original interest rate computations pursuant to the original Contract terms. Asheville Savings Bank will receive 40% of all future Net Sales Proceeds (NSP) applied to the principal loan balance outstanding, in accordance with the DIP loan documents executed 9/13/2010. Once the DIP loan is repaid 100% then 100% of the future NSP, (subject to allowance for the Build Out Reserve as provided in the DIP loan) will be paid to Asheville Savings Bank as loan principal reduction until paid in full with interest at the contract rate.

**CLASS 4. IMPAIRED SECURED CLAIM OF METROMONT COOPERATION** will not be paid interest or principal during the DIP loan tenure. The 2nd deed of trust contract note will accrue interest at 5% from the date of the approved Plan of Reorganization. Once the DIP loan is repaid 100%. and Asheville Savings Bank is repaid 100%, then Metromont Corporation will receive monthly interest at 5% and 100% of future NSP until repaid 100% .

**CLASS 5. IMPAIRED SECURED CLAIM OF ED BURDETTE CONSTRUCTION, INC.,** will be paid as a general unsecured claim, on a pro rata basis with other allowed unsecured claims. Ed Burdette Construction, Inc., will release its Materialmans/Mechanics Liens.

**CLASS 6. PRIORITY PROPERTY TAX CLAIMS:**

None

**CLASS 7. IMPAIRED GENERAL UNSECURED CLAIMS** will be paid in full over a period of three years. At closing of the DIP loan $265,000.00 was authorized to pay to Critical Contractors for a very minor partial repayment of their claims (approved by the court September 9th, 2020.) Thereafter, no payments will be made on these claims during the DIP loan term.

After the DIP loan, Asheville Savings Bank and Metromont Corporation are repaid 100% of their respective loans, payments will be 50% of NSP on a pro rata basis until all unsecured claims have been paid 100%. No interest will be paid on unsecured claims. The balance of NSP will be retained by French Broad Place for use in operations and finishing construction.

**CLASS 8. EXECUTORY CONTRACTS.** Assumption or rejection of Executory Contracts for the purchase of condominiums will be dealt with individually. All existing leases with purchase options will be assumed. In the case of the rejection of an Executory Contract, any resulting claim will be treated and paid as a general unsecured claim.

### REMEDY IN THE EVENT OF DEFAULT.

French Broad Place will be in default under the terms of this Plan if it defaults under any of the terms of the DIP loan, fails to make a payment on any claim when it is due, or upon closing of the sale of the unit fails to pay any creditor as provided in the Plan. In the event that payment is not made on any claim within thirty (30) days of its due date, or within thirty (30) days of the closing of the sale which resulted in the payment due to the creditor, the creditor may declare the obligation to be in default and proceed with its non bankruptcy remedies including execution on liens and security interests and collection of unsecured accounts. All secured creditors will retain their pre petition liens. French Broad Place will maintain full insurance coverage as long as claims remain unpaid.

### LIQUIDATION ANALYSIS

Appraisals conducted in the Spring of 2010 valued the property owned by French Broad Place from $10,500,000.00 to $12,500,000.00. Secured claims from lenders exceed $14,000,000.00. If this Chapter 11 proceeding were converted to Chapter 7, there would be no unencumbered assets available to liquidate for disbursement to unsecured creditors.

### ALLOWANCE OF CLAIMS

Claims are to be paid as filed, or if unfiled as listed in the Schedule's, as amended. The Debtor/Debtor in Possession reserves the right to object to any claim subsequent to the confirmation of the Plan, but prior to the scheduled disbursements on the claim. In the even the claim is objected to by the debtor/Debtor in Possession, but subsequently, allowed by the Court, payment on the claim will commence as provided in the Plan beginning with the next scheduled disbursement date.

### MANAGEMENT AND OWNERSHIP

French Broad Place is owned in equal shares by six (6) individuals: Mark Latell, Scott Latell, Frank Latell, Ed Burdette, Joshua Burdette and Scott Stafstrom. The owners will retain their ownership interests. Management will be continued by Mark Latell, Scott Latell and Joshua Burdette and one assistant. The salaries for this personnel are $11,500.00 per month funded from the DIP loan for a period of six months. From that point, these salaries are be funded out of sales commissions and overhead from sales activities throughout the completion of the Plan.

## EFFECTIVE DATE OF THE PLAN

The effective date of the Plan is thirty (30) days from the date the Plan is confirmed by the Court but no later than April 30th, 2011.

THIS 18 day of February, 2011.

                              PITTS, HAY, & HUGENSCHMIDT, P.A.
                              Attorneys for the Debtor(s)

By: _____
Edward C. Hay, Jr., NC Bar #7149
137 Biltmore Ave.
Asheville, NC 28801
(828) 255-8085